**Perry VENARD, Complainant–Appellant,**

**v.**

**DEPARTMENT OF CORRECTIONS, Arkansas Valley Correctional Facility, Respondent–Appellee,**

and

**Colorado State Personnel Board, Appellee.**

No. 01CA2065.

Colorado Court of Appeals, Div. III.

May 8, 2003.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

⚖️49(1)

Frank & Finger, P.C., William S. Finger, Evergreen, Colorado, for Complainant–Appellant.

Ken Salazar, Attorney General, Monica Ramunda, Assistant Attorney General, Vincent R. White, Assistant Attorney General, Denver, Colorado, for Respondent–Appellee.

Ken Salazar, Attorney General, Denise Deforest, Assistant Attorney General, Denver, Colorado, for Appellee.

Opinion by Chief Judge DAVIDSON.

Pursuant to § 24–50–125.4(3), C.R.S.2002, complainant, Perry Venard, appeals from the order of the Colorado State Personnel Board upholding his termination from employment. We vacate the order and remand for further proceedings.

Complainant's employment was terminated by the Colorado Department of Corrections (DOC) following the escape of three inmates from the Arkansas Valley Correctional Facility (AVCF). Complainant was hired by the DOC as a Correctional Support Supervisor II at the AVCF, where he supervised an inmate work crew. Complainant was in charge of the tools used at the facility and was responsible for marking and inventorying new tools, including Class A tools which could be used as a weapon or in an escape.

In February 1998, complainant received and inventoried fifteen new lineman pliers, which were classified as Class A tools. Complainant kept twelve of the lineman pliers in his desk drawer and put the remaining three in the tool locker located in the men's bathroom. The computer inventory showed that all fifteen of the pliers were located in the tool locker.

In September 1999, complainant was promoted to Correctional Support Supervisor III. He supervised the HVAC and plumbing staff but, according to the DOC, remained responsible for his previous duties, including tool control, until a replacement was hired.

In December 1999, three inmates escaped from the AVCF by cutting a hole in the fence surrounding the facility. A pair of lineman pliers that had been marked and inventoried by complainant in February 1998 was found on the ground where the escapees had cut through the fence.

Upon checking the tool locker and discovering that no tools were missing, complainant informed his supervisor that the pliers had likely come from his desk. The supervisor subsequently reported that information to the warden. Complainant was instructed by the warden to write an incident report, in which he stated the following: "Two pair of lineman pliers ... are missing from the physical plant. Both pliers were unissued replacement pliers." The warden was not satisfied with this report and asked complainant to write a more detailed incident report. In response, complainant composed a second report that read: "The two pair of pliers missing from the physical plant are missing from the staff bathroom, tool locker 5. They are pliers that were not yet issued. They were last inventoried in July of 1999. It is unknown to me how they could have left the locker."

Following an investigation, the warden terminated complainant's employment for failing to comply with certain administrative regulations by writing and submitting two false incident reports, for violating the staff code of conduct by keeping tools in his desk, and for intentionally assisting the inmates in escaping from the AVCF.

Complainant filed a timely appeal with the board. After a hearing, an administrative law judge (ALJ) upheld the termination and duly filed the record with the board. However, because of mechanical problems, one day of the hearing, which included the testimony of the warden, inadvertently was not transcribed. Asserting that the record was so incomplete that it did not permit meaningful review, complainant filed a motion to supplement and a motion for new hearing or remand and the taking of supplemental testimony. The board denied each of complainant's motions. Subsequently, complainant filed a motion for disqualification of one of the members of the board, which the board also denied.

## I.

On appeal, complainant makes the following assertions: (1) the board acted arbitrarily and capriciously and violated his due process rights in ruling that an incomplete record of the proceedings was adequate for purposes of review; (2) based on the record available to the board, there was insufficient evidence to support its order affirming complainant's termination; (3) the sanction of termination from employment was manifestly excessive in relation to the offense charged; (4) the board member's role as special assistant attorney general in *Gerganoff v. Department of Personnel* in the Denver District Court was in direct violation of Colo. Const. art. XII, § 14(1), which mandates that a board member shall not be an officer or employee of the state; and (5) the board member's position as a direct adversary of complainant's counsel in the *Gerganoff* matter created an appearance of impropriety that mandated her disqualification.

We agree with complainant's assertion that, under the circumstances here, the board member's dual role as special assistant attorney general in the *Gerganoff* matter, while at the same time a member of the board in this case, created an appearance of impropriety. Thus, we remand this matter to the board for further proceedings. Because the board is to reconsider complainant's other contentions on remand, we do not address them here.

## II.

■ We agree with complainant that the board's denial of his motion to disqualify the board member from these proceedings was improper.

■ A reviewing court may reverse an administrative agency's decision if the agency made a decision not supported by the record or erroneously interpreted the law. *See Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239 (Colo.2001).

■ Administrative agencies are obligated, as are courts, "to be fundamentally fair to the individual in the resolution of a legal dispute involving governmental action that threatens to deprive an individual of a significant property interest." *deKoevend v. Bd. of Educ.*, 688 P.2d 219, 227 (Colo.1984).

■ Absent a personal, financial, or official stake in the outcome evidencing a conflict of interest on the part of the decisionmaker, an adjudicatory hearing is presumed to be impartial. However, this presumption is rebuttable. *Mountain States Tel. & Tel. Co. v. Pub. Utils. Comm'n*, 763 P.2d 1020 (Colo.1988); *Soon Yee Scott v. City of Englewood*, 672 P.2d 225 (Colo.App.1983). Moreover, the decisionmaker must be neutral and detached. *See deKoevend v. Bd. of Educ., supra.*

■ When, as here, an administrative proceeding is quasi-judicial in character, board members should be treated as the equivalent of judges. *See Wells v. Del Norte Sch. Dist. C–7*, 753 P.2d 770 (Colo.App.1987).

■ C.R.C.P. 97 provides that a judge shall be disqualified in a case in which she is interested or prejudiced or "is so related or connected with any party or his attorney as to render it improper for [her] to sit on the ... proceeding." Additionally, a judge should avoid "impropriety and the appearance of impropriety in all [her] activities," C.J.C. Canon 2, and should "disqualify [herself] in a proceeding in which [her] impartiality might reasonably be questioned," C.J.C. Canon 3(C)(1). *See also Smith v. Beckman*, 683 P.2d 1214 (Colo.App.1984). Even though the judge or board member may be convinced of his or her own impartiality, it is the duty of the tribunal to eliminate all reasonable doubt that a trial or hearing by a fair and impartial council may have been denied. *See Zoline v. Telluride Lodge Ass'n*, 732 P.2d 635 (Colo.1987).

■ If counsel for a party files a motion to disqualify and signs a verified affidavit alleging conduct on the part of the tribunal that, if true, evidences bias, prejudice, or the appearance thereof, it is an abuse of discretion for the tribunal to refuse to withdraw from the case. *See Johnson v. Dist. Court*, 674 P.2d 952 (Colo.1984). The motion and affidavit are legally sufficient if they " 'state facts from which it may reasonably be inferred that the judge has a bias or prejudice that will prevent [her] from dealing fairly' with the party seeking recusal." *Johnson v. Dist. Court, supra*, 674 P.2d at 956 (quoting *People v. Botham*, 629 P.2d 589, 595 (Colo.1981)); *see also Goebel v. Benton*, 830 P.2d 995 (Colo. 1992)(mere allegations, opinions, or conclusions unsubstantiated by facts are not legally sufficient to mandate disqualification).

Here, complainant's counsel filed a motion for disqualification and a verified affidavit stating that the board member sitting as a decisionmaker in complainant's case while serving as adversary counsel to complainant's counsel in the *Gerganoff* matter created an appearance of impropriety sufficient to cast doubt on the impartiality of her decisions. Complainant's counsel also asserted that the board member's participation in this matter prejudiced complainant because her vote was the deciding vote on the board's rulings to deny his motion to supplement and to remand to the ALJ for a new hearing. We agree that under these circumstances, disqualification was required.

First, while a member of the board, the board member acted as counsel for the state in the *Gerganoff* case, representing the director of the Department of Personnel. Even if we assume that this representation in and of itself would not constitute a disqualification from service as a board member, *see* Colo. Const. art. XII, § 14(1) (board member shall not be officer or employee of the state), because the *Gerganoff* case is, as here, a

personnel matter, at best, her participation in both cases is discomforting.

We are compelled to conclude that this situation extends beyond mere awkwardness to an appearance of impropriety, however, because the board member served as a direct adversary to complainant's counsel in the *Gerganoff* matter at the same time that she was sitting as a decisionmaker in complainant's case. We agree with complainant that, under these circumstances, the board member's impartiality as a member of the tribunal deciding complainant's case could reasonably be called into question by the adversarial nature of her role as special assistant attorney general in a case in which complainant's counsel was her direct opponent. *Cf. Pierce v. United Bank,* 780 P.2d 6 (Colo. App.1989)(judge's close personal friendship with senior bank officer created appearance of impropriety); *Wells v. Del Norte Sch. Dist. C–7, supra* (hearing officer sitting at same restaurant table as school board counsel and witness created an appearance of impropriety).

Thus, we conclude that the context and manner in which the board member was connected with complainant's counsel created an appearance of impropriety, and consequently, it was an abuse of discretion for the board to allow her to sit in this case.

### III.

■ Respondent contends, and the board determined, however, that regardless whether there was an appearance of impropriety requiring disqualification, complainant waived his right to request the board member's recusal by failing to raise the issue in a timely manner. We disagree.

The statutory procedures for disqualification of an administrative adjudicator, as set forth in § 24–4–105(3), C.R.S.2002, require that a party filing a motion for disqualification must do so in a timely manner and provide sufficient evidence of personal bias. Neither this statute nor C.R.C.P. 97, which governs motions for a change of judge, sets forth a specific time within which a motion for disqualification must be filed.

■ However, if a party knows of grounds for disqualification when an action is filed, a motion to disqualify should be filed prior to taking any other steps in the case. *Aaberg v. Dist. Court,* 136 Colo. 525, 319 P.2d 491 (1957). Whether a motion is untimely and constitutes waiver depends upon the facts and circumstances in each case. *Johnson v. Dist. Court, supra.*

■ Waiver is "the intentional relinquishment of a known right or privilege." Waiver may be express, or it may be implied when a party's actions manifest an intent to relinquish a right or privilege. However, in establishing implied waiver by conduct, "the conduct itself should be free from ambiguity and clearly manifest the intention not to assert the benefit." *Dep't of Health v. Donahue,* 690 P.2d 243, 247 (Colo.1984).

Here, solely from the written record, the board determined that complainant's motion was untimely and constituted waiver. In making this determination, the board relied on the following uncontroverted facts: (1) the board member was appointed as a special assistant attorney general in the *Gerganoff* matter in May 2000; (2) the board member was elected in October 2000; (3) this matter came before the board in December 2000; and (4) complainant did not file a motion for disqualification until June 2001.

However, we discern no waiver merely from the timing of complainant's motion to disqualify. The record shows that until the issuance of the March 22, 2001 board order denying complainant's motion for a new hearing, all of complainant's correspondence came from either the ALJ or the assistant attorney general assigned to the matter. Additionally, the board member's name appears, along with the other board members' names, for the first time in the March 22 order. Although complainant continued to file routine motions with the board after the March 22 order, he received no rulings on these issues until May 15, 2001. And, in the May 15 order, in which the board denied complainant's motion to supplement the record, the board member's name appears twice and is noticeably separate from the other board members' names. Complainant filed the motion to disqualify within three weeks after

the issuance of the May 15 order. *See John-son v. Dist. Court, supra* (two-month delay in filing motion for disqualification does not constitute waiver); *cf. Estep v. Hardeman,* 705 P.2d 523, 527 n. 6 (Colo.1985)(when a motion for disqualification is not filed within ten-day period allowed under Crim. P. 21(b), standard for its timeliness is "whether the application is made as soon as possible after the occurrence or discovery of the facts which form the basis for the motion for substitution" (quoting *People v. Botham, supra,* 629 P.2d at 595)).

We conclude that the record is insufficient to support the board's conclusion that complainant's counsel intentionally delayed filing. Although failure to assert *known* grounds for disqualification may constitute a waiver, *Aaberg v. Dist. Court, supra,* here, the record is, at best, inconclusive as to whether complainant knew that the board member was a member of the board before the May 15, 2001 order was issued.

Thus, absent unequivocal evidence of an intent to waive his right to raise the issue of disqualification, it was an abuse of discretion for the board to conclude that complainant relinquished this right. *Cf. Welch v. George,* 19 P.3d 675, 677 n. 2 (Colo.2000)(settlement language does not "evidence a clear manifestation of intent by [the plaintiff] to waive his right to raise defenses available"); *Dep't of Health v. Donahue, supra,* 690 P.2d at 247 (employee's delay in raising the claim was "not the type of conduct that clearly manifested any intent ... to relinquish her claim").

Accordingly, we vacate the board's order and remand for reconsideration, without participation by the board member, of complainant's appeal, including his motion for a new hearing based on the absence of a record or, alternatively, to supplement the record.

The order is vacated, and the case is remanded to the board for proceedings in accordance with this opinion.

Judge ROY and Judge WEBB concur.